### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **NEBRASKA INDIAN COMMUNITY COLLEGE,** | ) ) ) | |
| **Plaintiff,** | ) ) | **8:05CV320** |
| vs. | ) ) | **ORDER** |
| **WPC GROUP, L.L.C., and WAYNE POSTOAK, individually,** | ) ) ) ) | |
| **Defendants.** | ) | |

This matter is before the court on defendants' MOTION TO COMPEL ARBITRATION (#15). Having carefully considered plaintiff's response in opposition (#18) and the reply filed by the defendants (#19), I find that the motion should be granted.

### FACTUAL BACKGROUND

Plaintiff ("NICC") is a Nebraska nonprofit corporation with its principal place of business in Macy, Nebraska. Defendant WPC Group, L.L.C. ("WPC") is a Kansas limited liability company with its principal place of business in Merriam, Kansas. Defendant Wayne Postoak is a major stockholder and officer of WPC.

On June 20, 2003, plaintiff and WPC entered into a written design-build agreement for the construction of a student center building on plaintiff's campus in Macy, Nebraska. This contract[1] included the following provisions concerning arbitration:

---

[1] A copy of the contract is attached to defendants' brief (#16). Although the document was not formally authenticated, *see* NECivR 7.1(a)(2)(C), plaintiff has not raised any objection in that regard and the court accepts counsel's representation that the document is, in fact, the parties' contract.

>   13.2   INITIAL RESOLUTION. If a dispute arises out of or relates to this Agreement or its breach, the parties shall endeavor to settle the dispute first through direct discussions. If the dispute cannot be settled through direct discussions, the parties shall endeavor to settle the dispute by mediation under the Construction Industry Mediation Rules of the American Arbitration Association before recourse to the dispute resolution procedures contained in this Agreement....
>
>   13.3   EXHIBIT NO. 1.  If the dispute cannot be settled by mediation within sixty (60) days, the parties shall submit the dispute to any dispute resolution process set forth in Exhibit No. 1 to this Agreement.
>
>   * * * *
>
>   EXHIBIT NO. 1 * * *  Pursuant to Paragraph 13.3, if neither direct discussions nor mediation successfully resolve the dispute, the parties agree that the following shall be used to resolve the dispute.
>
>   * * * *
>
>   __X__   Binding Arbitration. Binding Arbitration shall be pursuant to the Construction Industry Rules of the American Arbitration Association unless the parties mutually agree otherwise....  The arbitration award shall be final. Notwithstanding Paragraph 14.2,2 this agreement to arbitrate shall be governed by the Federal Arbitration Act and judgment upon the award may be confirmed in any court having jurisdiction.
>
>   * * * *
>
>   13.4 MULTIPARTY PROCEEDING. The parties agree that all parties necessary to resolve a claim shall be parties to the same dispute resolution proceeding.

The contract further provides, at paragraph 14.7, that the parties' "rights, liabilities, responsibilities and remedies ... whether in contract, tort, negligence or otherwise, shall be exclusively those expressly set forth in this Agreement."

Turning to the nature of the dispute, NICC alleges that it forwarded $421,186 to WPC on September 5, 2003 to cover the cost of the steel building contemplated by the contract.

-2-

WPC allegedly forwarded $222,000 to Butler Steel for engineering work and used the rest "for floating and making cash flow payments" to WPC's subcontractors. On January 7, 2004, WPC notified the steel manufacturer to stop working on NICC's order. On February 16, 2004, the steel manufacturer received a written stop order notice from WPC and a request to cancel NICC's order and return all payments to WPC. The steel manufacturer returned payments minus $200,000 for engineering work already performed. NICC was not notified of the stop order until June 1, 2005. By that time, the price of steel had risen.

Based on these allegations, NICC seeks damages for fraudulent misrepresentation, fraudulent concealment, tortious interference with business expectancy, tortious interference with a business relationship, and conversion. Defendants deny liability and affirmatively allege that NICC failed to comply with its contractual obligations, thus excusing WPC from performance and entitling WPC to recoupment or offset of plaintiff's claimed damages; NICC could not reasonably rely on any pre-contractual statements, as the written contract represented the parties' entire integrated agreement; NICC failed to mitigate its damages; the claims of fraudulent concealment and fraudulent misrepresentation were not pled with particularity; and the tort claims are barred by the "economic loss doctrine."

## LAW

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)." In this regard, "[s]ection 2 of the [Federal Arbitration Act ("FAA")]

provides that written arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract.'" *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686 (1996) (quoting 9 U.S.C. § 2; emphasis by Supreme Court); *see also Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 790 (8th Cir. 1998), *cert. denied*, 525 U.S. 1068 (1999). Thus, "[b]efore a party may be compelled to arbitrate under the [FAA], the district court must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement." *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 695-96 (8th Cir. 1994) (citing *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994)).

"The court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985). When deciding whether the parties agreed to arbitrate the dispute in question, "courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). Generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2; however, courts may not invalidate arbitration agreements under state laws applicable *only* to arbitration provisions. *Casarotto*, 517 U.S. at 687 (emphasis in original).

Accordingly, the court must stay this proceeding and compel arbitration if the court determines that the parties' dispute falls within the scope of a valid arbitration agreement. *Houlihan*, 31 F.3d at 696; 9 U.S.C. §§ 3 & 4.

In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 403-04 (1967), the Supreme Court held that a claim of fraud in the inducement of a contract as a whole must go to an arbitrator, but issues which go to the making of the agreement to arbitrate should be decided by a court. In this instance, NICC objects to arbitration on the ground that its claims are beyond the terms of the contract in that the dispute resolution provisions quoted above are beyond the scope of the arbitration clause. Significantly, NICC does not argue that it was fraudulently induced to agree to the arbitration clause.

The court finds that NICC's objections are without merit. The matters now in dispute are clearly matters that arise out of or relate to this design-build agreement or its breach and fall within the scope of the parties' arbitration agreement. The alleged fraud was not specifically directed toward the making of the arbitration agreement. Under *Prima Paint Corp.*, the issues at bar must be decided by an arbitrator and not by the court.

## CONCLUSION

In conclusion, the court finds that the design-build agreement involves interstate commerce, and the parties entered into a binding written agreement to arbitrate all disputes arising out of or relating to the agreement or its breach. The issues of fraud raised by the plaintiff relate to the inducement and performance of the contract as a whole, and not the

arbitration clause in particular. The arbitration clause is, therefore, enforceable under the Federal Arbitration Act and defendant's motion to compel arbitration should be granted.

**IT THEREFORE IS ORDERED** that the MOTION TO COMPEL ARBITRATION (#15) is granted, as follows:

    1. Plaintiff's claims are directed to arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*.

    2. Plaintiff shall commence said arbitration pursuant to the terms of the design-build agreement on or before **November 1, 2005**.

    3. Plaintiff's claims in this court are hereby stayed pursuant to 9 U.S.C. § 3 pending a final determination of plaintiff's claims by the arbitrators.

    4. The parties shall file written status reports with the Clerk of the Court concerning the progress of the arbitration proceeding. The first status report shall be filed by **March 1, 2006.** Subsequent status reports are due **every 90 days** thereafter.

    Pursuant to NECivR 72.2, a party may appeal this order by filing a "Statement of Appeal of Magistrate Judge's Order" within ten (10) days after being served with the order. The party shall specifically state the order or portion thereof appealed from and the basis of the appeal. The appealing party shall file contemporaneously with the statement of appeal a brief setting forth the party's arguments that the magistrate judge's order is clearly erroneous or contrary to law. **The filing of a statement of appeal does not automatically stay the magistrate judge's order pending appeal.** *See* NECivR 72.2(d).

    **DATED September 30, 2005.**

                                **BY THE COURT:**

                                **s/ F.A. Gossett**
                                **United States Magistrate Judge**